[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-16192
Non-Argument Calendar
_____

Docket No. 4:11-cv-00883-KOB

EDWARD R. LANE,

Plaintiff-Appellant,

versus

CENTRAL ALABAMA COMMUNITY
COLLEGE, STEVE FRANKS, Dr.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(July 24, 2013)

Before MARTIN, FAY, and EDMONDSON, Circuit Judges.

PER CURIAM:

Edward Lane appeals the district court's grant of summary judgment in favor of Steve Franks, the president of Central Alabama Community College ("CACC"), in his 42 U.S.C. § 1983 lawsuit alleging retaliation in violation of the First Amendment. No reversible error has been shown; we affirm.

In September 2006, Lane accepted a probationary position as Director of CACC's Community Intensive Training for Youth Program ("CITY"), a program for at-risk youth. Soon after assuming his duties, Lane audited CITY's finances and discovered that then-state representative Suzanne Schmitz was listed on CITY's payroll but was not reporting for work and had not otherwise performed tangible work for the program.

When Lane raised his concerns about Schmitz internally, he was warned by CACC's then-president and by CACC's lawyer that terminating Schmitz's employment could have negative repercussions for both Lane and CACC. Despite these warnings, Lane terminated Schmitz's employment with CITY after Schmitz refused to report to work.

Schmitz filed a lawsuit seeking to get her job back. Schmitz also commented to another CITY employee that she planned to "get [Lane] back" for

terminating her and that, if Lane requested money from the state legislature, she would tell him "you're fired."

Soon after Schmitz's job termination, the FBI began investigating Schmitz and contacted Lane for information. Lane testified before a federal grand jury and -- pursuant to a subpoena -- testified at Schmitz's August 2008 federal criminal trial for mail fraud and fraud involving a program receiving federal funds.

Lane testified that Schmitz had not reported to work and had not submitted time sheets. Lane described a couple of telephone conversations he had with Schmitz during which Lane asked about Schmitz's work responsibilities and explained that he needed to account for her day-to-day activities for CITY. Lane instructed Schmitz -- verbally and in writing -- to start reporting daily to CITY's Huntsville office. Over the phone, Schmitz responded by telling Lane that she had gotten her job through her connections with the Executive Secretary of the Alabama Education Association. Schmitz later sent a letter in which she refused to report to the Huntsville office and requested that she be allowed to "continue to serve the CITY Program in the same manner as [she had] in the past." Lane testified the he had expressed his concerns about Schmitz's position with CACC's interim president, who agreed that Lane needed to get Schmitz to report to work. Lane testified to these facts again at Schmitz's second criminal trial in February 2009.

In late 2008 -- due to substantial budget cuts -- Lane and Franks began discussing the possibility of employee layoffs, including laying off all probationary employees. In January 2009, Franks sent termination letters to 29 CITY employees with less than 3 years of service, which included Lane. A few days later, however, Franks rescinded nearly all of those terminations: Lane was one of only two employees whose termination was not rescinded. According to Franks, he rescinded the other terminations after discovering that many of the CITY employees were not in fact probationary.

Lane filed a civil action against Franks -- in both his official and individual capacity -- alleging that Franks terminated Lane in retaliation for testifying against Schmitz, in violation of the First Amendment.[1] The district court granted Franks's motion for summary judgment. Although the district court couched its decision in terms of qualified immunity, it determined that Lane's speech was made pursuant to his official duties as CITY's Director, not as a citizen on a matter of public concern. We reach the same conclusion. Because Lane has failed to establish a

---

[1] On appeal, Lane has abandoned expressly (1) his claims against CACC; (2) his claims for violation of the Alabama State Employee Protection Act, Ala. Code § 36-26A-3; (3) his claims for violation of 42 U.S.C. § 1985; and (4) his claim for money damages against Franks in his official capacity.

4

prima facie case of retaliation, we do not decide about Franks's defense of sovereign immunity.[2]

We review a district court's grant of summary judgment de novo, and we view the evidence and all reasonable factual inferences in the light most favorable to the nonmoving party. Skop v. City of Atlanta, 485 F.3d 1130, 1136 (11th Cir. 2007). "Summary judgment is appropriate if the evidence establishes 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003).

To establish a claim of retaliation for protected speech under the First Amendment, a public employee must show, among other things, that he "spoke as a citizen on a matter of public concern." See Garcetti v. Ceballos, 126 S.Ct. 1951, 1958 (2006) (a decision further restricting public employees' protected speech). A government employee whose speech is made pursuant to his official duties is not speaking as a citizen. See id. at 1960; Battle v. Bd. of Regents, 468 F.3d 755, 760 (11th Cir. 2006). Even if an employee was not required to make the speech as part

---

[2] Having concluded that Lane failed to establish even a prima facie case for a violation of a federal right, we necessarily also conclude that Lane failed to demonstrate that Franks violated a federal right of Lane's that was already clearly established before Franks acted. Thus, even if -- if, which we think is not correct -- a constitutional violation of Lane's First Amendment rights occurred in these circumstances, Franks would be entitled to qualified immunity in his personal capacity. See Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (government officials acting within the scope of their discretionary authority are immune from individual civil liability if the official's conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known.").

of his official duties, he enjoys no First Amendment protection if his speech "owes its existence to [the] employee's professional responsibilities" and is "a product that 'the employer itself has commissioned or created'". See Abdur-Rahman v. Walker, 567 F.3d 1278, 1286 (11th Cir. 2009).

Whether the subject speech was made by the public employee speaking as a citizen or as part of the employee's job responsibilities is a question of law for the court to decide. See Vila v. Padron, 484 F.3d 1334, 1339 (11th Cir. 2007). In determining whether a government employee's statement is protected by the First Amendment, "we look to the content, form, and context of a given statement, as revealed by the whole record." Abdur-Rahman, 567 F.3d at 1283.

In Morris v. Crow, we determined that a police officer's speech -- which consisted of the officer's accident report and his subpoenaed deposition testimony made in conjunction with judicial proceedings, "reiterat[ing]" the observations made in his accident report -- was unentitled to First Amendment protection. 142 F.3d 1379 (11th Cir. 1998). Because the officer prepared his accident report in the normal course of his official duties, the report did not constitute speech "made primarily in the employee's role as citizen." Id. at 1382. And because the officer's deposition testimony was given merely "in compliance with a subpoena to testify truthfully" -- and not as a "public comment on sheriff's office policies and procedures, the internal workings of the department, the quality of its employees or

6

upon any issue at all" -- it was unprotected under the First Amendment. Id. at 1382-83 ("The mere fact that Morris's statements were made in the context of a civil deposition cannot transform them into constitutionally protected speech.").[3]

No one disputes that Lane was acting pursuant to his official duties as CITY's Director when he investigated Schmitz's work activities, spoke with Schmitz and other CACC officials about Schmitz's employment, and ultimately terminated Schmitz's employment. That Lane testified about his official activities pursuant to a subpoena and in the litigation context, in and of itself, does not bring Lane's speech within the protection of the First Amendment. See id. Furthermore, because formal job descriptions do not control, that Lane's official duties did not distinctly require him to testify at criminal trials falls short of triggering First Amendment protection. See Abdur-Rahman, 567 F.3d at 1283.

Although not dispositive, we consider it pertinent that the subject matter of Lane's testimony touched only on acts he performed as part of his official duties. See Abdur-Rahman, 567 F.3d at 1282. As in Morris, nothing evidences that Lane

---

[3] Other circuits seem to have decided this issue differently. See Morales v. Jones, 494 F.3d 590, 598 (7th Cir. 2007) (concluding that a public employee's subpoenaed deposition testimony about speech he made pursuant to his official duties was protected by the First Amendment); Reilly v. City of Atlantic City, 532 F.3d 216 (3d Cir. 2008) (explaining that a police officer's trial testimony was protected by the First Amendment because, although the testimony stemmed from the officer's official duties, the officer had an "independent obligation as a citizen to testify truthfully."). But Morris is the law in this Circuit on the question of public employee speech per a subpoena in the context of judicial proceedings.

testified at Schmitz's trial "primarily in [his] role as a citizen" or that his testimony was an attempt to comment publicly on CITY's internal operations.

In the light of our precedents, the record fails to establish that Lane testified as a citizen on a matter of public concern: as a matter of law, he cannot state a claim for retaliation under the First Amendment.  Franks was entitled to summary judgment.

AFFIRMED.